**CHARLES M. DUNNING CONST. CO. v. UNITED STATES et al.**

Civ. Nos. 3874, 4075.

United States District Court, W. D. Oklahoma.

Oct. 1, 1953.

F. M. Dudley and R. C. Jopling, Jr., of Richardson, Cochran, Dudley, Fowler & Rucks, Oklahoma City, Okl., for plaintiff.

Robert E. Shelton, U. S. Atty., Oklahoma City, Okl., and Isidor Lazarus, Atty., Dept. of Justice, Washington, D. C. (Warren E. Burger, Asst. Atty. Gen., and Edward H. Hickey, Atty., Dept. of Justice, Washington, D. C., of counsel), for defendants.

VAUGHT, Chief Judge.

The parties and the subject-matter being the same in each of these cases the court, on agreement of the parties, consolidated said cases for trial.

The plaintiff seeks to recover the sum of $207,041.21 claimed as losses in the performance of a contract it entered into with the United States of America (through its proper agency and hereinafter referred to as the Government or in the alternative the agency involved), on May 25, 1943, designated as contract No. W–957–eng–1890, by the terms of which the plaintiff agreed, for the consideration named therein, to furnish certain material and all labor necessary to construct and complete a plant, designated as Modification Center No. 17, at or near Oklahoma City, Oklahoma.

The complaint alleges as follows: Said modification center was a project essential to the war effort. Under the terms of the contract the Government agreed to furnish certain of the material called for in the plans and specifications. The contract provided that the plant should be completed within 116 days. The plaintiff commenced work under the contract on May 27, 1943 and completed its contract on or about September 21, 1943, within the specified time. In the performance of the contract the plaintiff sustained a loss of $489,098.15, which loss was not due to the fault or inefficiency of plaintiff, or to any other cause over which it had control, but was due to the acts of the Government, said loss resulting solely from delays in furnishing materials as required by it under the contract. Such delays caused a loss of 28 days time, or approximately 25 per cent of the 116 days time allocated under the contract for construction. In order to overcome the delay, plaintiff was compelled to hire a great number of additional workmen on the job, and due to labor conditions, these additional workmen were only 10 to 20 per cent efficient, and by reason thereof its plans were entirely disorganized, resulting in the losses of which it complains. On October 16, 1943, plaintiff filed its claim of $489,098.15 with the proper authorities and requested it be reimbursed for said loss by an adjustment or otherwise. Thereafter an official of the Government suggested to plaintiff that while the claim seemed meritorious, only $312,827.70 of said claim could be allowed under the First War Powers Act, 1941, and that plaintiff should file another claim in that amount. Under date of July 27, 1944, plaintiff submitted a claim for an adjustment of the contract price in the sum of $312,827.70. On August 10, 1944, a supplemental agreement, "Modification No. 29," was entered into between plaintiff and the Government, under which the terms of the aforesaid contract No. W–957–eng–1890 were modified pursuant to the First War Powers Act, 1941, 50 U.S.C.A. Appendix, § 601 et seq., and Executive Order 9001, 50 U.S.C.A. Appendix, § 611 note, by increasing the amount of the contract by $312,827.70, which sum was thereafter duly paid to plaintiff and the completed modification center was duly accepted by the Government. No action has ever been taken on plaintiff's claim of $489,098.15. On January 22, 1947, plaintiff filed a

claim for $207,041.21 as loss in the performance of said contract, as modified, under and pursuant to Public Law 657, 79th Congress 2nd Session, Chap. 864, 60 Stat. 902, 41 U.S.C.A. § 106 note (hereinafter referred to as the Lucas Act). Said claim was submitted to the War Contract Hardship Claims Board (hereinafter referred to as the Board), and thereafter said Board entered its order denying and dismissing the claim (copy of which was attached to and made a part of the complaint).

Plaintiff contends that its claim of January 22, 1947 in all things complied with the Lucas Act and Executive Order 9786, dated October 5, 1946, U.S. Code Cong.Service 1946, p. 1848, and showed on its face that plaintiff was entitled to receive the sum of $207,041.-21. That it had on file with the War Department before August 14, 1945 a written request for relief for the loss incurred under said contract in the sum of $489,098.15, but it did agree to accept $312,827.70 upon its claim filed July 27, 1944. At that time plaintiff was faced with bankruptcy. The Army engineers advised plaintiff it could pay that amount under the First War Powers Act in order to prevent plaintiff, as a contractor necessary to the war effort, from becoming bankrupt, but that no more could be paid under said Act, and that unless plaintiff accepted said sum, no relief whatsoever could be secured. Plaintiff prays for judgment in the sum of $207,041.21 and such other relief as it is entitled to in the premises.

The Government set up five defenses in its answer. First, it admitted that said contract had been entered into and the terms thereof but denied that plaintiff incurred the loss amounting to $489,-098.15 alleged to have resulted from a 28-day delay in completion of the contract caused by the fault of the Government and the inefficiency of the additional labor employed, necessitated by the delays. It admitted that plaintiff on October 16, 1943, addressed a letter to an agent of the Department of the Army requesting an adjustment of its contract

in the amount of $489,098.15 for losses incurred in the performance of its contract, and subsequently, on July 27, 1944, wrote a second letter revising the requested adjustment to the sum of $312,-827.70, and on August 10, 1944, an agreement was executed between plaintiff and the representative of the Department of the Army under the terms of which plaintiff's claims, it avers, were discharged and released in full by increasing the amount of the contract by $312,-827.70, paid to the plaintiff. It particularly avers that both of the letters and the agreement of August 10, 1944, were solely in reference to the identical claims of loss and the identical contract and factual situation. It admits plaintiff's allegations relative to the claim of January 22, 1947 being submitted to and subsequently denied and dismissed by the Board but denies that said claim in all instances complied with the Lucas Act and Executive Order 9786, and that on its face the claim showed plaintiff was entitled to the sum of $207,-041.21. It further denied plaintiff's allegations relative to the claim filed October 16, 1943 being undisposed of on August 14, 1945 and contends that final action was taken on said claim prior to August 14, 1945 and denies that plaintiff has established any claim as alleged in the complaint. Second, the Government avers plaintiff has no claim upon which relief can be granted, in that a final determination was made of plaintiff's claim before August 14, 1945, and therefore plaintiff is not entitled to relief under the Lucas Act and paragraph 204 of Executive Order 9786. Third, it contends that plaintiff would not have been granted relief under section 201 of the First War Powers Act, 1941, and Executive Order 9001 if final action had been taken prior to August 14, 1945, therefore, plaintiff is not entitled to relief under the Lucas Act and Executive Order 9786, paragraph 307. Fourth, it contends that under the circumstances involved, such relief would be prohibited by section 6 of the Lucas Act, for the reason that the Department of the Army

was not authorized to grant the relief in the exercise of its power under the First War Powers Act, 1941, because it found that the requested amendment to the contract would not facilitate the prosecution of the war. And for its fifth defense, it alleges plaintiff is barred from relief under the Lucas Act for the reason that it executed a bilateral agreement on or about September 29, 1944, comprising a complete discharge and release of the claim.

The trial of this action consumed several days and the record contains almost a thousand pages of testimony aside from depositions offered, together with a large number of voluminous exhibits.

The record discloses the following facts. On May 25, 1943 and for several years prior thereto, plaintiff was a corporation organized under the laws of Oklahoma and was engaged in the general construction business. On said date it entered into contract No. W–957–eng–1890 with the Government for the construction of Modification Center No. 17 at Oklahoma City, Oklahoma. Said contract was a war contract. The plaintiff was an experienced contractor in this character of work, and commenced and completed the project within the specified time. The original contract price was approximately $2,244,639. Plaintiff claimed it sustained a large loss in the performance of the contract and on October 16, 1943, filed with a representative of the Government a request for an adjustment of the contract in the sum of $570,781.59, all of which loss was claimed for a 28-day delay in the performance of the contract, caused by the fault of the Government and through no fault or negligence of the plaintiff. On February 5, 1944, plaintiff filed with the proper officers of the Government a letter which modified its claim of $570,781.59, reducing it to $489,098.15. There ensued many conferences between the plaintiff and representatives of the Government with a view to accomplishing an adjustment of the contract.

The principal difference between the parties concerned the labor employed by plaintiff necessitated by the 28-day delay in the performance of the contract caused by the Government. Plaintiff contended that due to the delay it was necessary to intensify the work and it had to employ a large amount of additional labor. Because of the labor situation, it was unable to employ skilled workers, and the labor employed was only from 10 to 20 per cent efficient, resulting in a great financial loss to plaintiff. It was finally suggested by the Government that as a compromise it was willing to concede that the labor so employed was only 50 per cent efficient, and if the plaintiff would file a claim for losses in the approximate sum of $300,-000, the claim could be allowed, paid, and the matter closed. Plaintiff, by reason of its loss on the contract, was unable to pay its creditors and was facing bankruptcy, and although the amount suggested would not pay its loss, pursuant to the suggestion, on July 27, 1944 it submitted a claim readjusting the contract in the sum of $309,500.74, which later by amendment was increased to $312,827.70. Before paying the $312,-827.70, the Government required plaintiff to withdraw and release all claims it had submitted on said contract, with the exception of a small claim for painting, which was done.

Had it not been for the passage of the Lucas Act that, without doubt, would have ended the matter. But on August 17, 1946, Congress passed such Act, 60 Stat. 902, 41 U.S.C.A. § 106 note, which in part reads as follows:

"That where work, supplies, or services have been furnished between September 16, 1940, and August 14, 1945, under a contract or subcontract, for any department or agency of the Government which prior to the latter date was authorized to enter into contracts and amendments or modifications of contracts under section 201 of the First War Powers Act, 1941 (50 U.S.C.A. Appendix, § 611), such departments and agencies are hereby authorized, in accordance with regulations to be

prescribed by the President within sixty days after the date of approval of this Act, to consider, adjust, and settle equitable claims of contractors, * * * for losses (not including diminution of anticipated profits) incurred between September 16, 1940, and August 14, 1945, without fault or negligence on their part in the performance of such contracts or subcontracts. Settlement of such claims shall be made or approved in each case by the head of the department or agency concerned or by a central authority therein designated by such head.

"Sec. 2. (a) In arriving at a fair and equitable settlement of claims under this Act, the respective departments and agencies shall not allow any amount in excess of the amount of the net loss (less the amount of any relief granted subsequent to the establishment of such loss) on all contracts and subcontracts held by the claimant under which work, supplies, or services were furnished for the Government between September 16, 1940, and August 14, 1945, and shall consider with respect to such contracts and subcontracts (1) action taken under the Renegotiation Act (50 U.S.C.A. Appendix, § 1191), the Contract Settlement Act of 1944 (41 U.S.C.A. §§ 101–125), or similar legislation; (2) relief granted under section 201 of the First War Powers Act, 1941, or otherwise; and (3) relief proposed to be granted by any other department or agency under this Act. * * *

* * * * * *

"Sec. 3. Claims for losses shall not be considered unless filed with the department or agency concerned within six months after the date of approval of this Act, and shall be limited to losses with respect to which a written request for relief was filed with such department or agency on or before August 14, 1945, but a previous settlement under the First War Powers Act, 1941, or the Contract Settlement Act of 1944 shall not operate to preclude further relief otherwise allowable under this Act.

* * * * * *

"Sec. 6. Whenever any claimant under this Act is dissatisfied with the action of a department or agency of the Government in either granting or denying his claim, such claimant shall have the right within six months to file a petition with any Federal district court of competent jurisdiction, asking a determination by the court of the equities involved in such claim; and upon the filing of such a petition, the court, sitting as a court of equity, shall have jurisdiction to determine the amount, if any, to which such claimant and petitioner may be equitably entitled (not exceeding the amount which might have been allowed by the department or agency concerned under the terms of this Act) and to enter an order directing such department or agency to settle the claim in accordance with the finding of the court; and thereafter either party may appeal from the decision of the court as in other equity cases."

Section 6, supra, was amended June 25, 1948, by Section 37, Chap. 646, 62 Stat. 992, 41 U.S.C.A. § 106 note, to read thus:

" 'Sec. 6. Whenever any claimant under this Act is dissatisfied with the action of a department or agency of the Government in either granting or denying his claim, such claimant shall have the right within six months to file a petition with the Court of Claims or, if the claim does not exceed $10,000 in amount or suit has heretofore been brought or is brought within thirty days after the enactment of this amendatory act, with any Federal district court of competent jurisdiction, asking a determination by the court of the equities involved in such claim;

and upon filing of such a petition, the court, sitting as a court of equity, shall have jurisdiction to determine the amount, if any, to which such claimant and petitioner may be equitably entitled (not exceeding the amount which might have been allowed by the department or agency concerned under the terms of this Act) and to enter an order directing such department or agency to settle the claim in accordance with the finding of the court; and thereafter either party may appeal from the decision if it was rendered by a district court or petition the Supreme Court for a writ of certiorari if it was rendered by the Court of Claims, as in other cases. Any case heretofore brought in a district court under this section may, at the election of the petitioner to be exercised within thirty days after the enactment of this amendatory Act, be transferred to the Court of Claims for original disposition in that court.'

"Sec. 38. The provisions of this Act shall take effect on September 1, 1948."

Subsequently, on October 5, 1946, the President issued Executive Order 9786, prescribing regulations governing the consideration, adjustment, and settlement of claims under said Act. Quoting therefrom:

"204. No claim for loss under any contract or subcontract of a war agency shall be received or considered unless a written request for relief with respect thereto was filed with such war agency on or before August 14, 1945; and no claim shall be considered if final action with respect thereto was taken on or before that date."

"307. Relief with respect to a particular loss claimed shall not be granted under the Act and these Regulations unless the war agency considering the claim finds, or, in case such loss was incurred under the contracts and subcontracts of another war agency, such other war agency finds, that relief would have been granted under the First War Powers Act, 1941, if final action with respect thereto had been taken by the war agency on or before August 14, 1945."

A proper claim for loss was filed on October 16, 1943, an amendment filed February 5, 1944, and the claim for $312,827.70 filed July 27, 1944—all prior to August 14, 1945, and if such claims were sufficient to apprise the agency that it was being asked to grant extra-legal relief they all met the test required by the statute, under all the authorities cited.

In Howard Industries, Inc. v. United States, 83 F.Supp. 337, 343, 113 Ct.Cl. 231, the court said:

"The requirement contained in Section 3 of the Lucas Act that claimants must have filed a written request for relief prior to August 14, 1945, merely means, we think that claimants must be able to show that they had made timely (that is, prior to August 14, 1945) protest to the contracting agencies concerning the losses now sued on and so have given those agencies an opportunity to either grant or deny their claims. This the plaintiff has done by the three letters referred to earlier in this decision."

In McGann Manufacturing Company, Inc., v. United States, D.C.Pa., 98 F. Supp. 225, 228, the court said:

"Notice of the loss under said contract was given to the U. S. Maritime Commission by petitioner by letter dated April 12, 1945, and the U. S. Maritime Commission acknowledged receipt of said notice on April 24, 1945. In Fogarty v. U. S., supra, (340 U.S. 8, 71 S.Ct. 5, 95 L.Ed. 10) Mr. Justice Minton of the U. S. Supreme Court, in referring to the term 'written request for relief' as it

appears in section 3 of the Act, stated, inter alia: 'Since there is no definition of the term in the Act or regulations, and since the legislative history of the Act does not show that any settled usage of the term was brought to the attention of Congress, no particular form of notice is required. But whatever the form of notice, it must be sufficient to apprise the agency that it was being asked to grant extra-legal relief under the First War Powers Act for losses sustained in the performance of war contracts.' Petitioner's letter dated April 12, 1945, meets the test of this language."

In Prebilt Co. v. United States, D.C. Mass., 88 F.Supp. 588, 591, the court held:

"The first question is whether plaintiff before August 14, 1945 filed a claim fulfilling the requirements of sec. 3 of the Lucas Act. Defendants' contention is that since the various claims filed by plaintiff prior to that date did not specifically set forth that they were for 'losses', these claims do not fulfill the requirements of the Act. The basis for relief under the Lucas Act is that the contractor has suffered losses without fault or negligence on his part. But this basis for relief appeared in the statutes only with the enactment of the Lucas Act itself on August 7, 1946. Relief under the First War Powers Act previous to August 14, 1945 had been on the basis of whether the granting of it would facilitate the prosecution of the war. Surely a claimant under the Lucas Act is not to be barred because, when it sought relief months before August 14, 1945, it was not enough of a prophet to phrase its claims specifically in the words of a statute which was still months in the future. It is enough if, before that critical date, it put the government on notice that it sought not merely such adjustments as it might be entitled to have made as a matter of right under its contract, but also that it asked relief over and above its strict contract rights. On this basis, the plaintiff's letters, above referred to, appealing to the head of the Agency from the denial of its claims by the contracting officer were sufficient notice that those claims were brought as claims for relief. While not specifically referring to the First War Powers Act, they did cite the Executive Orders issued under that Act, and thus made the claims requests for the extraordinary relief which was then available to contractors. Howard Industries, Inc., v. United States, 83 F.Supp. 337, 340, 113 Ct.Cl. 231."

■■ The Government contends that Executive Order 9786, supra, would prohibit recovery in this cause. Executive Order 9786 is contrary to and at variance with the plain and unambiguous language of the Lucas Act, and under all the authorities, the statute takes precedence over the executive order and the order is held to be ineffective and of no force or effect. We cite only a few of those authorities.

In the McGann Case, supra, the court held, 98 F.Supp. at page 229:

"Defendant contends that Petitioner cannot recover alleged losses under the electric winch contract because of Paragraph 204 of Executive Order 9786, which provides, in part, as follows: 'No claim shall be considered if final action with respect thereto was taken on or before that date (August 14, 1945).' It appears from the evidence that the U. S. Maritime Commission, following petitioner's requests of April, 1945, did increase the contract price on the electric winch contract. Although this fact would appear to place the situation under Executive Order 9786, such an argument ignores Section 3 of the Act itself which provides, in part, as follows: 'But a previous settlement under the First

War Powers Act, 1941, or the Contract Settlement Act of 1944 shall not operate to preclude further relief otherwise allowable under this Act.' It is fundamental that the provisions of the Executive Order are not controlling insofar as they may be inconsistent with the Act itself. Judge Holtzoff, referring to this problem in Warner Construction Co. v. Krug, Secretary of the Interior, D.C.D.C., 1948, 80 F.Supp. 81, 84, set forth clearly the guiding principles, as follows: 'Insofar as Sections 204 or 307 of the rules and regulations promulgated under the statute may be inconsistent with Section 3 of the Act, these regulations must be deemed invalid. It is elementary law that executive regulations promulgated for the purpose of carrying a statute into effect must be within the framework of the Act and may not be inconsistent with the statute.' See, also, Howard Industries, Inc., v. U. S., 1949, 83 F. Supp. 337, 113 Ct.Cl. 231. Applying the same rule in the present case, petitioner is not barred from recovery for alleged losses under the electric winch contract because of the above quoted portion of Paragraph 204 of Executive Order 9786."

Judge Holtzoff, in Warner Construction Company v. Krug, D.C.D.C., 80 F. Supp. 81, 82, settles the contention in the following language:

"The Government contends that this action does not lie because the plaintiff's claim had been previously adjusted and settled under the First War Powers Act, 1941, * * *. This adjustment and settlement was embodied in an amendatory contract between the plaintiff and the Government. The amendatory agreement contains a general release, running from the plaintiff to the Government. Ordinarily such a settlement, and particularly such a general release, would necessarily preclude the subsequent assertion of claims for any additional payments under the contract to which the settlement related.

"Section 3 of the Act of August 7, 1946, however, contains the following provision: '* * * a previous settlement under the First War Powers Act, of 1941, or the Contract Settlement Act of 1944, shall not operate to preclude further relief otherwise allowable under this Act.'

"It is contended by the plaintiff that this provision waives the bar of the previous settlement and relinquishes the rights of the government under the general release. Obviously the Congress has the right to waive a release in behalf of the Government. It would seem under a literal construction of this provision that this is just what the Congress did.

"The Government argues, however, that the term 'settlement' should be limited to a unilateral adjustment made by a government agency, and does not extend to an agreement or settlement embodied in a contract. In other words, the Government urges that if the administrative agency had settled or adjusted the claim, such settlement would not have precluded further relief, but that because the settlement was embodied in a bilateral contract or agreement, which included a release, the binding effect of the settlement is not waived by the Act of Congress.

"The Court is unable to find a tenable basis for the distinction which the Government seeks to draw. The statute is clear and unambiguous. It provides that a previous settlement under a prior statute shall not operate to preclude further relief otherwise allowable under the Act of 1946. A settlement consummated by a bilateral agreement is as much a settlement as is a unilateral adjustment or allowance of a

claim. The term 'settlement' covers both methods of adjusting a claim. It is obvious to the Court that it was the intention of the Congress, by the Act of August 7, 1946, to authorize Government agencies to make adjustments of claims, in addition to any adjustment which had been previously made. Moreover, a judicial review was accorded by the 1946 Act, which had not been contained in the First War Powers Act.

\*　\*　\*　\*　\*　\*

"This legislative history throws an illuminating light on the intent of Congress and accentuates the clear meaning of the last clause of Section 3. It is manifest that it was the intention of Congress that a prior settlement under the earlier statute should not operate to preclude the granting of further relief under the 1946 Act."

██ Having come to the conclusion that proper notice of the losses claimed by the plaintiff were timely given, that Executive Order 9786 is inconsistent with section 3 of the Lucas Act and by reason thereof must be deemed invalid, and that a previous settlement shown by this record would not preclude further relief, there is only one question to be determined—whether plaintiff has suffered a loss in the performance of its contract, and, if any, the amount thereof over and above the previous settlement of $312,827.70.

As stated above, the record discloses that the bulk of the claimed losses was brought about by the labor situation under the circumstances encountered by plaintiff, and the prior settlement of $312,827.70 was effected by a compromise agreement that the Government would concede that the labor efficiency was only 50 per cent instead of from 10 to 20 per cent as contended by plaintiff. If the contention of plaintiff was correct, then settling for 50 per cent represented a large loss to the plaintiff. Attached to the complaint is the opinion of the Board denying plaintiff's claim

sued upon here. The statement of facts and the opinion based thereon are of great importance here. Quoting from the "statement of facts:"

"\*　\*　\* This contract, dated 25 May 1943, was entered into between the Government and claimant in the amount of $2,244,639 (approximate) which was increased materially by later modifications. It provided for the construction of what was designated as Modification Center No. 17, located at Oklahoma City, Oklahoma, which consisted of two modification buildings joined by a two-story center section with all utilities and appurtenances thereto. Work was begun 27 May 1943. Completion date was 21 September 1943. Beneficial occupancy date for Unit 1 was set as 1 August 1943 and for Unit 2, 1 September 1943. The claimant met numerous difficulties but complied with both dates fixed for beneficial occupancy at the insistence of the contracting officer because of the urgent need for these facilities.

"On 16 October 1943, the claimant in a letter addressed to the Area Engineer, Corps of Engineers, Oklahoma City, Oklahoma, requested an adjustment in the amount of $489,-098.15 for losses incurred in the performance of this contract.

"The foregoing request was forwarded by the District Engineer at Tulsa, Oklahoma, to the Chief of Engineers through the Division Engineer, Southwestern Division, by letter dated 9 November 1943. This letter concludes with the statement: 'If it is possible to grant the contractor relief under the provisions of the First War Powers Act, 1941, and Executive Order 9001, it is the recommendation of this office that such relief be granted.'

"The Office of the Chief of Engineers in instructions to the Division Engineer, Southwestern Division, dated 25 April 1944, outlined

the basis for submitting a proper statement in the instant claim in order that it might be considered for the granting of relief under the First War Powers Act.

"In accordance with this request, the claimant resubmitted its claim together with substantiating documents, in a letter dated 27 July 1944, * * *.

"The aforesaid letter of contractor of 27 July 1944 * * * also included executed Modification No. 29, dated 10 August 1944, providing for adjustment in contract No. W–957–eng–1890, in the amount of $312,827.70. In this letter it is said: 'The subject modification, issued under the authority contained in the First War Powers Act, 1941, and Executive Order 9001, constitutes an adjustment in the contract amount as reimbursement to the contractor for additional expenses incurred by him as a result of "pitfall" situations encountered during the performance of the contract which were created through acts of the Government as the other contracting party.'

\* \* \* \* \* \*

"The Office of the Chief of Engineers, by 2nd Indorsement dated 22 September 1944, forwarded the claim to the Director, Purchases Division, Headquarters, Army Service Forces, recommending relief in the amount of $312,827.70, inclosing with the recommendation Modification No. 29 executed by both parties providing for payment of that amount.

"In referring to the fact that the above amount was less than the amount originally claimed by the contractor, it is stated in this letter: 'The contracting officer has calculated the loss resulting directly from the causes referred to above, and the proposed supplemental agreement adjusts the contract price in the amount of $312,827.70 to reimburse the contractor for such loss. This is considerably less than the total loss on this contract in the amount of approximately $495,000. The contractor's position is that the entire loss actually resulted from Government action and circumstances beyond its control. Judging from the contractor's previous record, it is reasonable to believe that the excess of the loss, over and above the amount being reimbursed, did not result from inefficiency of the contractor. However, the amounts specified by the contracting officer are the only parts of the loss which can definitely be calculated as a direct result of Government action, and the contractor has therefore agreed to this amount.'

\* \* \* \* \* \*.

"The claimant in the claim as now presented alleges, among other things, that: 'No final action with respect to the original claim filed was ever taken' and that 'no other written request was filed prior or subsequent to August 14, 1945, with any agency for relief with respect to the losses claimed.'"

Then follows the opinion from which we quote excerpts as follows:

" * * * The Government considered that the contractor had one claim and the amount paid to him as relief under the First War Powers Act was in full settlement of the subject claim and with regard to it final action has been taken in the light of paragraph 204 of Executive Order 9786 of 5 October 1946, which states that:

" 'No claim for loss under any contract or subcontract of a war agency shall be received or considered unless a written request for relief with respect thereto was filed with such war agency on or before August 14, 1945; and no claim shall be considered if final action with respect thereto was taken on or before that date.'

\* \* \* \* \* \*.

"The contractor evidently accepted the amount specified in Modification No. 29 as conclusive of the claim because he filed no request for further relief other than the one with regard to which final action was taken prior to 14 August 1945. This claim as submitted states: 'No other written request was filed prior or subsequent to August 14, 1945, with any agency for relief with respect to the losses claimed.'

"The present claimant may not now predicate a claim on the basis of that part of Section 3 of Public Law 657 which states that: ' * * * but a previous settlement under the First War Powers Act, 1941, or the Contract Settlement Act of 1944 shall not operate to preclude further relief otherwise allowable under this Act.' To be 'otherwise allowable under this Act,' pursuant to Section 3 cited above, all the requirements for the filing and consideration of a claim must be complied with and this claim is deficient in that no written request for the relief now asked was filed on or before 14 August 1945 after First War Powers relief had been granted.

"For the reasons stated this claim is dismissed."

These excerpts from the opinion, together with the testimony in this record, give a complete picture of the factual situation and the contentions of the parties. Certain statements of fact contained in that opinion are fully substantiated by the evidence and place the defendants in a poor position to attempt to controvert them here. We emphasize a few:

1. "The claimant met numerous difficulties but complied with both dates fixed for beneficial occupancy at the insistence of the contracting officer because of the urgent need for these facilities."

2. "If it is possible to grant the contractor relief under the provisions of the First War Powers Act, 1941, and Executive Order 9001, it is the recommendation of this office that such relief be granted."

3. "In referring to the fact that the above amount was less than the amount originally claimed by the contractor, it is stated in this letter: 'The contracting officer has calculated the loss resulting directly from the causes referred to above, and the proposed supplemental agreement adjusts the contract price in the amount of $312,827.70 to reimburse the contractor for such loss. This is considerably less than the total loss on this contract in the amount of approximately $495,000. The contractor's position is that the entire loss actually resulted from Government action and circumstances beyond its control. Judging from the contractor's previous record, it is reasonable to believe that the excess of the loss, over and above the amount being reimbursed, did not result from inefficiency of the contractor."

The opinion of the Board speaks for itself. It is clear that it is based upon two points. One, that there was definitely one claim only considered for relief, and, two, that the claim was finally settled before August 14, 1945, relying upon Executive Order 9786 and by reason thereof claimant was precluded from predicating a claim on the basis of section 3 of the Lucas Act.

██ The sole purpose of the Lucas Act was to protect honest contractors from losses not due to any fault of theirs. It went far to provide that technicalities should be disregarded and that even a previous settlement should be ignored in order to do actual justice between the Government and the contractor. In other words, the Act places the Government in the position of paying any losses sustained by the contractor in good faith and not due to any negligent act of the contractor. The Board, in its statement of facts and its opinion, supra, admits plaintiff's losses and that

they were not due to any act of the contractor. The basis of the settlement in the sum of $312,827.70 instead of approximately $490,000 was an arbitrary determination that the additional labor provided by the contractor was 50 per cent efficient. The testimony in this case corroborates the statement by the plaintiff that the labor was not more than 20 per cent efficient. The evidence discloses that the estimated cost of labor by the contractor at the time the contract was entered into was $370,000, and that the actual amount expended for labor in the performance of the contract was in excess of $904,000. If the Board had the power to determine that the labor was only 50 per cent efficient it also had the power, under proper evidence, to determine that it was only 20 per cent efficient. The excess labor costs amounted to approximately $534,-000. If this labor was only 20 per cent efficient, more than $400,000 of the $534,000 could be designated as loss. There were other items of loss however, as disclosed by the record.

Plaintiff contends that the claim of $489,098.15 was never acted upon and the Government contends that under the settlement and payment of $312,827.70 the claim was acted upon and finally settled. But in view of the provision under section 3 of the Lucas Act, the previous settlement need not be considered when, as here, the claim is rightfully before the court on its merits as an equity action. The plaintiff has amply met the burden of proof and has established its loss.

After taking into consideration the other contracts which plaintiff performed, and was interested in performing, for the Government between September 16, 1940 and August 14, 1945, together with Contract No. W–957–eng–1890 involved here, the court is of the opinion that the plaintiff is entitled to recover its loss under the claim sued upon in the sum of $177,526.01.

Findings of fact, conclusions of law and a proper form of judgment consistent with this opinion may be submitted within 30 days from this date.